# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **THE CJS SOLUTIONS GROUP, LLC** | § | |
| **d/b/a THE HCI GROUP,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | |
| | § | **Case No. 1:21-CV-223-RP** |
| **MARY CLOWERS, COWBOY &** | § | |
| **SCHATZ, LLC, DREW MADDEN,** | § | |
| **and EVERGREEN HEALTHCARE** | § | |
| **PARTNERS, INC.,** | § | |
| *Defendants* | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:   THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendants' Motion to Dismiss and Memorandum in Support, filed September 10, 2021 (Dkt. 49); Plaintiff's Response to Defendants' Motion to Dismiss, filed November 5, 2021 (Dkt. 56); and Defendants' Reply in Support of Motion to Dismiss, filed November 12, 2021 (Dkt. 58). On October 15, 2021, the District Court referred the motion to the undersigned Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

## I.   Background

Plaintiff The CJS Solutions Group, LLC d/b/a The HCI Group ("HCI") is a Florida company with its principal place of business in Jacksonville, Florida. HCI offers IT consulting and professional services to healthcare facilities in the United States. Plaintiff's Am. Compl. (Dkt. 38) ¶ 16. As part of its services, HCI provides staffing to healthcare facilities to implement new electronic medical record systems ("EMR"). HCI has a business partnership with EPIC

Corporation, a healthcare software company offering an electronic medical record software known as "EPIC EMR." *Id.* ¶ 17. EPIC EMR supports functions related to patient care, clinical systems for medical professionals, systems for imaging and lab reports, and record keeping and billing systems for insurers. As part of its partnership with EPIC, HCI enters into service agreements with healthcare facilities to provide EPIC-certified consultants to assist in implementing EPIC EMR. *Id.* ¶ 18.

In February 2019, HCI entered into a service agreement with Seattle Children's Hospital in Seattle, Washington (the "Seattle Project"). *Id.* ¶ 23. On February 3, 2019, HCI sent Mary Clowers, a Texas resident and the President of Cowboy and Schatz LLC ("C&S"), a letter offering her a consulting job as Program Director for the Seattle Project (the "Consulting Agreement"). *Id.* ¶ 24. Clowers executed the Consulting Agreement on February 21, 2019. Dkt. 38-2 at 15. The Consulting Agreement provided that Clowers would work as an independent contractor, and that either party could terminate the contract with 30 days written notice. *Id.* §§ 4, 12. HCI alleges that Clowers also entered into a confidentiality agreement, a non-solicitation agreement, and an agreement to refrain from conflicts of interest, such as working for a direct competitor, while working for HCI. 38 ¶¶ 26-28.

In the fall of 2020, as the Seattle Project was coming to an end, HCI began negotiating with a new potential client, Wellforce Inc., a healthcare provider in Boston, Massachusetts. Based on HCI's experience with Clowers on the Seattle Project, HCI asked Clowers to help HCI "pitch and close the Wellforce Project," and Clowers agreed. *Id.* ¶ 35. HCI alleges that on November 9, 2020, Clowers traveled to Boston to give a pitch to Wellforce on HCI's behalf. *Id.* ¶ 38.

On December 10, 2020, HCI sent Clowers a letter offering her the position of Vice President-Consulting Engagement, in which she would be "primarily responsible for developing, implementing, and overseeing the Wellforce Project as the Program Director." *Id.* ¶ 43. HCI

alleges that Clowers executed the new employment agreement on December 17, 2020, with a start date of December 21, 2020. The agreement stated that Clowers' job with HCI was at will and could be terminated by either party "at any time, with or without notice." Dkt. 29-5 at 2.

The day before Clowers was to start her new job, she informed HCI that she was terminating her employment, effective immediately. Dkt. 38 ¶ 47. HCI alleges that during the fall of 2020, when Clowers was supposed to be helping HCI land the Wellforce Project, she was working as a "double agent" for one of HCI's direct competitors, Evergreen Healthcare Partners, Inc. ("Evergreen").[1] *Id.* ¶ 59. HCI contends that Evergreen's Chief Executive Officer, Drew Madden,[2] "began a text message campaign" in November 2020 to "induce" Clowers to work for Evergreen and "breach her contractual and fiduciary duties to HCI." *Id.* ¶¶ 52, 56. HCI alleges that Evergreen recruited Clowers to work for Evergreen to procure the Wellforce Project. HCI alleges that "Madden and Evergreen knew Clowers and C&S had intimate knowledge of the Wellforce Data and sought to use that data for their benefit, and to HCI's determent." *Id.* ¶ 61. HCI further alleges that "Madden and Evergreen knew that submitting Clowers as an Evergreen representative for the Wellforce Project, when she was already submitted to the Wellforce Project as an HCI representative would cause confusion with Wellforce." *Id.* ¶ 65.

Clowers began working for Evergreen on December 19, 2021. *Id.* ¶ 73. Shortly thereafter, Wellforce awarded the project to Evergreen, and Clowers became the Project Director of the Wellforce Project. *Id.* ¶ 74.

On March 9, 2020, HCI filed this suit against Clowers and C&S, alleging breach of contract, breach of fiduciary duty, and tortious interference with prospective contracts and business

---

[1] Evergreen is a Delaware corporation, with its principal pace of business in Middleton, Wisconsin. Dkt. 38 ¶ 6.

[2] Madden is a resident of Middleton, Wisconsin. *Id.* ¶ 5.

relationships. Dkt. 1. On August 12, 2021, HCI filed an Amended Complaint, adding Madden and Evergreen as defendants and asserting claims of tortious interference with existing contract and tortious interference with prospective contracts and business relations against them. HCI also added a civil conspiracy claim against all Defendants.

Madden and Evergreen now move to dismiss HCI's claims for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and alternatively for failure to state a claim under Rule 12(b)(6). Clowers and C&S move to dismiss HCI's claims for failure to state a claim under Rule 12(b)(6). HCI opposes the motion.

## II.    Legal Standards

### A.  Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. The plaintiff has the burden of establishing jurisdiction. *Patterson v. Aker Sols. Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). If, as here, the court rules on personal jurisdiction without conducting an evidentiary hearing, the plaintiff bears the burden of establishing only a *prima facie* case of personal jurisdiction. *Id.* "The district court is not obligated to consult only the assertions in the plaintiff's complaint in determining whether a prima facie case for jurisdiction has been made. Rather, the district court may consider the contents of the record at the time of the motion . . . ." *Sangha v. Navig8 ShipManagement Priv. Ltd.,* 882 F.3d 96, 101 (5th Cir. 2018). "Although jurisdictional allegations must be accepted as true, such acceptance does not automatically mean that a *prima facie* case for [personal] jurisdiction has been presented." *Id.* The plaintiff must establish specific jurisdiction for each claim asserted. *Danziger & De Llano, L.L.P. v. Morgan Verkamp*, *L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022)

A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant if the state's long-arm statute permits an exercise of jurisdiction over that defendant and

an exercise of jurisdiction would comport with the requirements of the Due Process Clause of the Fourteenth Amendment. *Sangha*, 882 F.3d at 101. Because the requirements of the Texas long-arm statute are coextensive with the requirements of the Due Process Clause, the sole inquiry is whether the Court's exercise of personal jurisdiction over the defendant would be consistent with due process. *Id.* In order for personal jurisdiction to satisfy due process requirements, a plaintiff must show that (1) the defendant purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of "fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945).

A defendant's "minimum contacts" may give rise to either general or specific personal jurisdiction, depending on the nature of the suit and the defendant's relationship to the forum state. *Sangha*, 882 F.3d at 101. A court may assert general jurisdiction over non-resident defendants "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317). Specific jurisdiction exists "when a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins. Co*., 921 F.3d 522, 539 (5th Cir. 2019). Because personal jurisdiction is "an essential element of the jurisdiction of a district court without which the court is powerless to proceed to an adjudication," courts must reach the personal jurisdiction issue before reaching claims on the merits. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).

## B.  Rule 12(b)(6)

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the

court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is generally limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III.   Defendants' Rule 12(b)(2) Motion to Dismiss

As stated, HCI, a Florida corporation, filed this suit in Austin, Texas against Wisconsin residents Madden and Evergreen and Texas residents Clowers and C&S. HCI asserts claims of civil conspiracy and tortious interference with existing and prospective contracts against Madden and Evergreen. The parties dispute whether the Court has specific personal jurisdiction over Madden and Evergreen.

Specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). For a state to exercise jurisdiction consistent

with due process, the defendant's suit-related conduct must create a substantial connection with the forum state. *Id.* The Fifth Circuit Court of Appeals has articulated a three-step analysis for the specific jurisdiction inquiry:

1. whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there;

2. whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and

3. whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019). If the plaintiff satisfies the first two prongs, the burden shifts to the defendant to make a "compelling case" that the assertion of jurisdiction is not fair or reasonable. *Id.*

The first factor requires HCI to demonstrate that Madden and Evergreen had sufficient minimum contacts with the State of Texas. For there to be minimum contacts to confer specific jurisdiction, "a defendant must have purposefully availed himself of the benefits and protections of the forum state such that he should reasonably anticipate being haled into court there." *Carmona*, 924 F.3d at 193. "That requirement is the 'constitutional touchstone' of personal jurisdiction, and ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

### A.  Madden and Evergreen's Contacts with Texas

It is undisputed that Madden is a Wisconsin resident, Evergreen's principal place of business is in Wisconsin, and Madden oversees Evergreen's business operations from Wisconsin. It also is undisputed that HCI is a Florida company which negotiated and executed all relevant employment and service contracts from its offices in Florida. The Wellforce Project, with which HCI alleges all Defendants tortiously interfered, is based in Massachusetts.

The only connection this case has to Texas is the fact that Clowers is a Texas resident. HCI does not allege that Madden ever traveled to Texas to recruit or hire Clowers or to procure the Wellforce Project. Nonetheless, HCI argues that Evergreen and Madden are subject to personal jurisdiction in Texas because: (1) Madden sent hundreds of text messages and emails to "a Texas resident" in order to "convince Clowers to breach her contract with HCI"; and (2) the employment contract between HCI and Clowers "required performance in Texas" and that any disputes be litigated in Texas. Dkt. 56 at 9-10. HCI asserts: "There can be no doubt that Evergreen and Madden purposely aimed their tortious conduct at a contract governed by Texas law, which included a Texas resident and in which the contract was performed in Texas." *Id.* at 10. In support of this argument, HCI relies on the "effects test" established *Calder v. Jones*, 465 U.S. 783 (1984). HCI's reliance on *Calder* is misplaced and misconstrues the "minimum contacts" analysis.

### B.  *Calder* and the Effects Test

*Calder* was a libel suit filed by a California actress in California state court against a reporter and editor, both of whom worked for the National Enquirer at its headquarters in Florida. *Calder*, 465 U.S. at 784-85. The plaintiff's libel claims were based on an article written and edited by the defendants in Florida for publication in the National Enquirer, a national weekly newspaper with a California circulation of roughly 600,000. *Id.* The California Court of Appeals held that California's assertion of jurisdiction over the defendants was consistent with due process, and the Supreme Court affirmed. Although the Court recognized that the defendants' activities "focus[ed]" on the plaintiff, the jurisdiction inquiry turned on "the relationship among the defendant, the forum, and the litigation." *Id.* at 788. Thus, the Court focused on the contacts the defendants had created with California, not just with the plaintiff. It found those contacts to be ample. The defendants relied on phone calls to "California sources" for the information in their article; they wrote the story about the plaintiff's activities in California; they caused reputational injury in California by

an allegedly libelous article that was widely circulated in the state; and the "brunt" of that injury was suffered by the plaintiff in that state. *Id.* at 788-89. "In sum, California [wa]s the focal point both of the story and of the harm suffered." *Id.* at 789. Jurisdiction over the defendants was "therefore proper in California based on the 'effects' of their Florida conduct in California." *Id.*

In *Walden*, the Supreme Court clarified and elaborated on *Calder*. *Walden*, 571 U.S. at 287. "The crux of *Calder*," the Court explained, "was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." *Id.* Because "the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens," *id.* at 287-88, "the 'effects' caused by the defendants' article—*i.e.*, the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to *California*, not just to a plaintiff who lived there," *id.* at 288. "That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction." *Id.*

Thus, under *Calder* and *Walden*, the "minimum contacts" analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. "The proper focus of the 'minimum contacts' inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.' And it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* at 291 (quoting *Calder*, 465 U.S. at 788).

The Fifth Circuit has explained that "the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008). Thus:

> To establish personal jurisdiction in intentional tort cases, it is "insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' or on the 'unilateral activity' of a plaintiff. A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum."

*Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 495 (5th Cir. 2022) (quoting *Walden*, 571 U.S. at 286).

### C.  Madden and Evergreen Did Not Purposely Direct Their Actions at Texas

HCI focuses on the fact that Clowers is a Texas resident and on its own actions in this case: entering into an employment contract with a Texas resident, that Clowers was to perform that contract in Texas, and that disputes arising out of that contract were to be litigated in Texas. Under the effects test, these considerations are irrelevant to whether *Evergreen and Madden* purposely directed their activities at Texas. "[T]he plaintiff cannot supply 'the only link between the defendant and the forum.' Rather, jurisdiction is proper only where the 'defendant *himself*' made deliberate contact with the forum." *Carmona*, 924 F.3d at 194 (quoting *Walden*, 571 U.S. at 285). And, "a third party's unilateral activities cannot establish minimum contacts between the defendant and forum state." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

The only fact HCI identifies that is relevant to Evergreen and Madden's contacts with Texas is that Madden sent text messages and emails to Clowers when attempting to hire her in November and December 2020. But it is not clear whether Clowers actually was in Texas at that time. As HCI alleges in its Amended Complaint, during part of that period, Clowers was in Boston meeting with Wellforce. Dkt. 38 ¶ 38.

Even if Clowers was in Texas when she received Madden's texts and emails, the Fifth Circuit has found such contacts to be insufficient to support a finding of specific jurisdiction. For example, in *Sangha*, Captain Manjit Sangha, a Texas-based seaman, lost his job at Marine Consulting and

sued Navig8, a foreign entity, for tortious interference with a contract. 882 F.3d at 99. Sangha argued that Texas courts had specific personal jurisdiction over Navig8, based on the following: (1) "email communications from two Navig8 representatives located outside the country to Cpt. Sangha's then-supervisor in Alabama"; (2) "an employment contract between Cpt. Sangha and Marine Consultants [sic] allegedly confected in Houston"; (3) "that the email communications [from Navig8 to Captain Sangha's former supervisor] were targeted at a contract formed in Texas"; and (4) "that the emails concerned work that was to be performed in Texas." *Id.* at 103. The Fifth Circuit held that these contacts "are legally insufficient to support a finding of specific jurisdiction." *Id.* The court stated: "Even though Navig8's email communications happened to affect Cpt. Sangha while he was at the Port of Houston, this single effect is not enough to confer specific jurisdiction over Navig8." *Id.* After all, "mere injury to a forum resident is not a sufficient connection to the forum." *Id.* (citing *Walden*, 571 U.S. at 290). "The proper question is not whether Cpt. Sangha experienced an injury or effect in a particular location, but whether Navig8's conduct connects it to the forum in a meaningful way." *Id.* at 103-04. And because "Cpt. Sangha's presence in the Gulf of Mexico/Port of Houston is largely a consequence of his relationship with the forum, and not of any actions Navig8 took to establish contacts with the forum," Sangha failed to establish a prima facie case of personal jurisdiction. *Id.* at 104.

The Court similarly finds that Madden's emails and texts to Clowers do not "meaningfully connect" Evergreen and Madden to Texas. *Danziger*, 24 F.4th at 497 (finding that defendant's email to Texas resident did not "*meaningfully* connect" the defendant to Texas); *see also Gundle Lining Const. Corp. v. Adams Cnty. Asphalt, Inc.*, 85 F.3d 201, 205 (5th Cir. 1996) ("[E]ngaging in communications surrounding the execution and performance of a contract, and the fact that a nonresident enters into a contract with a resident are insufficient to establish the requisite minimum contacts necessary to support the exercise of personal jurisdiction over a nonresident defendant.").

In this case, Evergreen and Madden's contacts with Texas are based exclusively on the "mere fortuity" that co-defendant Clowers is a Texas resident. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (finding that exchange of communications between Texas and Oklahoma was in itself insufficient to constitute purposeful availment of the benefits and protections of Texas law where communications to Texas rested on nothing but "the mere fortuity" that plaintiff happened to be a resident of the forum). The purposeful availment of the privilege of conducting activities within the forum state required by the due process clause cannot be inferred from such a "mere fortuity." *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985).

"The key question, under *Calder*, is whether the forum state was 'the focal point both of the [alleged libel] and of the harm suffered.'" *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021) (quoting *Calder*, 465 U.S. at 789). Here, HCI suffered no harm in Texas; rather, HCI suffered financial harm in its home state of Florida. Accordingly, HCI's reliance on *Calder* is misplaced. HCI has not demonstrated that Evergreen and Madden have sufficient minimum contacts with Texas to confer personal jurisdiction over them in Texas. Given the Court's finding that no minimum contacts exist, the Court need not consider the remaining specific jurisdiction factors. *See Moncrief*, 481 F.3d at 315. Accordingly, Defendants' Evergreen and Madden's Motion to Dismiss for lack of personal jurisdiction should be granted.

## IV.    Defendants' Rule 12(b)(6) Motion to Dismiss

Defendants move to dismiss HCI's breach of contract, breach of fiduciary duty, tortious interference with prospective contracts and business relationships, and civil conspiracy claims for failure to state a claim under Rule 12(b)(6).[3] In support of their Motion to Dismiss, Defendants rely on text messages between Madden and Clowers that allegedly contradict HCI's allegations.

---

[3] Because the Court does not have personal jurisdiction over Evergreen and Madden, the Court does not address their arguments for dismissal under Rule 12(b)(6).

*See* Dkt. 49 at 15-16. Because this evidence was not attached to HCI's Amended Complaint, it would be improper to consider such evidence under Rule 12(b)(6). *See Walker*, 938 F.3d at 735 ("In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201.").[4]

### A.  Breach of Contract

Defendants argue that HCI's breach of contract claim fails because it is conclusory and fails to show causation. Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* In addition, "[a]ll questions of fact and any ambiguities in the current controlling substantive law must be resolved in the plaintiff's favor." *Lewis v. Fresne*, 252 F.3d 352, 357 (5th Cir. 2001).

To state a claim for breach of contract under Texas law, a plaintiff must allege: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach.

---

[4] District courts also may consider documents attached to a defendant's motion to dismiss "that are referred to in the complaint and are central to the plaintiff's claims." *Walker*, 938 F.3d at 735. The text messages may be central to the defense of this case, but Defendants have failed to demonstrate that they are central to HCI's claims. *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 537 (5th Cir. 2003); *Engerat v. Quincy Bioscience, LLC*, No. 1:19-CV-183-LY, 2019 WL 4962597, at *3 (W.D. Tex. Oct. 8, 2019) ("Defendant has failed to show how a reference to a Study administered by the Defendant in one of its own advertisements is central to Plaintiffs' claims in this case."), *R. & R. adopted*, 2020 WL 504660 (W.D. Tex. Jan. 9, 2020). Accordingly, the Court does not consider the text messages.

*Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). Thus, HCI's Amended Complaint "must assert enough facts that make it plausible that a contract existed between the parties, [plaintiff] fully performed, the contract was breached, and [plaintiff] has been harmed." *Provision Grp., Inc. v. Crown Toxicology, Ltd.*, No. 5:16-CV-1291-DAE, 2017 WL 11221433, at *3 (W.D. Tex. Oct. 19, 2017).

In support of its breach of contract claim, HCI alleges that (1) Clowers and C&S entered into a valid contract—the Consulting Agreement; (2) HCI paid Clowers as required under the Agreement; (3) Clowers and C&S breached the Agreement by exploiting HCI's confidential information, engaging in conflict of interest transactions, and directly competing with HCI while employed with HCI; and (4) HCI suffered monetary damages as a direct and proximate result of these breaches. Dkt. 38 ¶¶ 128-30. Regarding damages, HCI alleges that Clowers and C&S's breaches "caused HCI to lose the Wellforce Project" and "threaten to undermine HCI's future ability to secure Projects and hire quality consultants." *Id.* ¶ 132. HCI further alleges that its "goodwill and reputation are also threatened by Clowers and C&S's actions." *Id.*

The Court finds that HCI's allegations are more than mere conclusory statements. Taken as a whole, they provide a sufficient factual basis to allege a "plausible" breach of contract claim under Texas law. *Twombly*, 550 U.S. at 570. Accordingly, the undersigned Magistrate Judge recommends that Defendants' Motion to Dismiss HCI's breach of contract claim be denied.

### B. Tortious Interference

Defendants next argue that HCI's tortious interference with prospective contracts and business relationships claim is insufficient because it is conclusory and fails to show causation. Texas law protects prospective as well as existing contracts from third party interference. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 712-13 (Tex. 2001). To state a claim for tortious interference with prospective business relations, the plaintiff must allege that:

1.  there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party;

2.  the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct;

3.  the defendant's conduct was independently tortious or unlawful;

4.  the interference proximately caused the plaintiff injury; and

5.  the plaintiff suffered actual damage or loss as a result.

*Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013). In support of its tortious interference with business relations claim, HCI alleges the following:

> HCI had a prospective business relationship with Wellforce, and there was a reasonable probability that HCI would have entered into a business relationship or contract with Wellforce absent Clowers's and C&S's improper actions.
>
> Prior to Wellforce awarding the Project to Evergreen, HCI had several discussions with Wellforce concerning the Project, and Clowers and C&S, allegedly acting on behalf of HCI, attended an in-person meeting with Wellforce to pitch HCI's proposal.
>
> Clowers and C&S intentionally committed independently tortious acts that prevented HCI from forming a contractual or business relationship with Wellforce which include, but are not limited to, breaching fiduciary duties owed to HCI by utilizing HCI's resources to procure the Wellforce Project for Evergreen, misrepresenting to HCI that Clowers and C&S were not interested in working for Wellforce, misappropriating HCI's trade secrets and proprietary business information and directly competing with HCI while Clowers was supposedly attempting to land the Wellforce Project as a representative of HCI.
>
> Based on the timing of Clowers's and C&S's actions, they clearly committed these improper acts with a conscious desire to prevent HCI from obtaining the Wellforce Project and knew interference was certain or substantially certain to occur due to Clowers's and C&S's conduct. Clowers and C&S knew that if Evergreen secured the Wellforce Project, HCI would be prevented from doing so.
>
> As a direct and proximate result of Clowers's and C&S's tortious interference, HCI has suffered damages, including lost revenues associated with the Wellforce Project and harm to HCI's goodwill and reputation and substantial payments made to Clowers and C&S that should be disgorged and returned.

Dkt. 38 ¶¶ 144-48.

The Court finds that HCI's allegations are sufficient to allege a plausible tortious interference with prospective contracts and business relationships claim under Texas law. *Twombly*, 550 U.S. at 570. Accordingly, Defendants' Motion to Dismiss this claim should be denied.

### C.  Breach of Fiduciary Duty

Under Texas law, the elements of a breach of fiduciary duty claim are: "(1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007). Defendants argue that the Court should dismiss HCI's breach of fiduciary duty claim because the Amended Complaint "does not sufficiently allege facts showing that Ms. Clowers owed a fiduciary duty as an independent contractor to HCI." Dkt. 49 at 17.

It is well settled that "not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 176-77 (Tex. 1997). Texas law recognizes two types of fiduciary relationships. The first, a formal fiduciary relationship, "arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers." *Navigant Consulting*, 508 F.3d at 283. The second, an informal fiduciary relationship, "may arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one." *Id.* "But Texas law does not recognize a fiduciary relationship lightly, especially in the commercial context." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 809 (5th Cir. 2017) (cleaned up).

In support of its claim that Clowers and C&S owed it a fiduciary duty, HCI alleges that:

> During the term of the Consulting Agreement, Clowers and C&S provided consulting services to Seattle Children's Hospital on behalf of HCI and pursued the Wellforce Project on behalf of HCI. As such, Clowers and C&S were agents of HCI, and a fiduciary relationship existed between them concerning the subject matters contained in the Consulting Agreement and all dealings with Wellforce and HCI consultants.

Dkt. 38 ¶ 136. In its response brief, HCI argues that by executing the Consulting Agreement, Clowers agreed to act as HCI's agent, which gave rise to her fiduciary duty to HCI.

The existence of a principal and agency relationship is determined "by the terms of the agreement between the parties." *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 702 (Tex. 2007) (quoting Restatement (Second) of Agency § 376 (Am. Law Inst. 1958)). Thus, the Court must look to the Consulting Agreement to determine whether a fiduciary relationship was created. *Id.* at 702-03.

The Consulting Agreement provides, in relevant part:

> **Independent Contractor**. In the performance of the Services under this Agreement, it is understood and agreed that Consultant is at all times performing as an independent contractor, and that no relationship of partnership, joint venture, or employment is created by this Agreement. The Consultant shall not in any event have any right to bind HCI, to make any representations or warranties on HCI's behalf, to accept service of process, or to receive notice on behalf of HCI, except as authorized in writing by HCI in its sole discretion.

Dkt. 38-2 at § 12.[5] Thus, the Consulting Agreement clearly and unambiguously states that Clowers was hired as an "independent contractor," not an agent. *See Nat'l Plan*, 235 S.W.3d at 703 (declining to impose general fiduciary duty when agreement provided for "independent contractor" status). "The parties themselves defined the parameters of their respective roles, and if they had

---

[5] The Court may consider the Consulting Agreement under Rule 12(b)(6) because HCI attached the Agreement to its Amended Complaint and it is central to HCI's claims. *See Walker*, 938 F.3d at 735.

intended to create a principal-agent relationship, they could have done so expressly." *Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 60-61 (Tex. App. 2015—no pet.) (declining to impose general fiduciary duty where agreement stated that defendant was an "independent contractor, not an agent").

While HCI points to language in the Consulting Agreement in which Clowers agreed to "refrain from directly or indirectly disclosing to any third party"[6] a contractual obligation "does not generally give rise to a fiduciary duty." *Nat'l Plan*, 235 S.W.3d at 702. Thus, in *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 203 (Tex. 2002), the Texas Supreme Court stated that an employee may agree by contract with her employer not to make referrals to another employer, but the Court would not "elevate such a consensual, contractual duty into a fiduciary duty imposed by law." Accordingly, HCI has not alleged sufficient facts to show that Clowers owed it a formal fiduciary duty as its agent.

HCI also fails to allege sufficient facts to show the existence of an informal fiduciary relationship. An informal fiduciary duty may arise from certain relationships of trust and confidence. *Meyer v. Cathey*, 167 S.W.3d 327, 330-31 (Tex. 2005). Not every relationship involving a high degree of trust and confidence rises to the stature of a fiduciary relationship. *Id.* at 330. "To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit." *Id.* at 331; *see also Schlumberger*, 959 S.W.2d at 177 (stating that, "to impose such a relationship in a business transaction, there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit").

---

[6] Dkt. 38-2 § 6.

HCI alleges no facts suggesting that a fiduciary relationship existed before the parties executed the Consulting Agreement. HCI trusted Clowers to act on its behalf, but "mere subjective trust does not, as a matter of law, transform arm's-length dealing into a fiduciary relationship." *Schlumberger*, 959 S.W.2d at 177. Because HCI alleges no prior fiduciary relationship in this case, it has not stated a fiduciary duty claim. *Id.* (holding that fiduciary duty claim failed where there was "no evidence of a prior fiduciary relationship in this case"); *Davis-Lynch*, 472 S.W.3d at 61 (holding that fiduciary duty claim failed where there was no evidence that the parties were operating on any basis other than an arm's length relationship and on equal terms).

### D. Civil Conspiracy

Finally, Defendants allege that HCI fails to allege a plausible civil conspiracy claim under Texas law. The Court agrees. An action for civil conspiracy has five elements:

1. a combination of two or more persons;
2. the persons seek to accomplish an object or course of action;
3. the persons reach a meeting of the minds on the object or course of action;
4. one or more unlawful, overt acts are taken in pursuance of the object or course of action; and
5. damages occur as a proximate result.

*First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). In relevant part, HCI makes the following allegations for its conspiracy claim:

> This is an action for civil conspiracy to cause Clowers and C&S to breach their duties owed to HCI.
>
> Madden and Evergreen caused Clowers and C&S to breach their duties owed to HCI by inducing, encouraging, assisting, or persuading Clowers and C&S to directly compete with HCI and to use and exploit HCI's Confidential Information and the Wellforce Data to Evergreen's benefit, and to HCI's determinant.
>
> Clowers and C&S did breach their duties owed to HCI by directly competing with HCI and using HCI's Confidential Information and the Wellforce Data to Evergreen's benefit, and to HCI's detriment.

Dkt. 38 ¶¶ 166-68.

An actionable civil conspiracy "requires specific intent to agree to accomplish something unlawful or to accomplish something lawful by unlawful means. This inherently requires a meeting of the minds on the object or course of action." *Parker*, 514 S.W.3d at 222. HCI's allegations are conclusory and fail to state all of the essential elements of a civil conspiracy claim. In addition, HCI appears to have abandoned this claim by failing to address it in response to the Motion to Dismiss. *See Black v. North Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (finding that plaintiff's failure to defend her claim in response to defendant's motion to dismiss "constituted abandonment"); *A. B. v. Salesforce.com, Inc.*, No. 4:20-CV-01254, 2021 WL 3616097, at *6 (S.D. Tex. Mar. 22, 2021) ("Plaintiffs' failure to argue whatsoever in response to [defendant's] motion to dismiss the civil conspiracy claim constitutes a waiver of such an argument."). Therefore, the Court recommends that HCI's conspiracy claim be dismissed.

## V.    Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART AND DENY IN PART** Defendants' Motion to Dismiss (Dkt. 49).

The undersigned **RECOMMENDS** that the District Court **GRANT** Defendants' Rule 12(b)(2) Motion to Dismiss and **DISMISS** Defendants Evergreen Healthcare Partners, Inc. and Drew Madden from this lawsuit for lack of personal jurisdiction.

The undersigned **FURTHER RECOMMENDS** that the District Court **GRANT** Defendants' Rule 12(b)(6) Motion to Dismiss HCI's breach of fiduciary duty and civil conspiracy claims and **DENY** the Motion to Dismiss HCI's breach of contract and tortious interference with prospective contracts and business relations claims.[7]

---

[7] If the District Court adopts this Report and Recommendation, HCI's claims against Clowers and C&S for breach of contract and tortious interference with prospective contracts and business relations will be the only claims remaining.

The Court **FURTHER ORDERS** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## VI.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on March 14, 2022.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE

21